IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JANE FRERES,<br><br>        Plaintiff,<br>vs.<br><br>XYNGULAR CORP.,<br><br>        Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No.  2:13CV400 DAK |

This matter is before the court on Defendant Xyngular Corporation's ("Xyngular") Motion to Amend the Judgment and on Plaintiff Jane Freres' Motion for Attorney Fees.  The court has carefully reviewed the written memoranda submitted by the parties, and, pursuant to Local Rule 7-1(f), the court has concluded that oral argument would not be helpful or necessary, and thus the court will determine the motion on the basis of the written memoranda.  *See* DUCivR 7-1(f).

A jury trial in this case was held from March 30, 2015 through April 3, 2015.  The jury returned a verdict for Ms. Freres, awarding $252,613 in expectation damages.  The jury also determined that consequential damages in the form of attorney fees should be awarded to Ms. Freres, in an amount determined by the court.  It is this award of attorney fees that is at issue in Defendant's Motion to Amend the Judgment.

## BACKGROUND

On the first morning of trial, counsel for Ms. Freres, after consulting with Xyngular's

counsel, raised an issue concerning the procedure for dealing with attorney fees:

> MR. MANNING: There's one other issue and I think we have agreement on this. We have a claim for attorney's fees based upon that being a consequential damage resulting from the breach of an agreement that specifies procedures . . . specifically designed to avoid incurring significant attorney's fees and they have breached those.
>
> Mr. Edwards says he will object if we try to put on evidence of attorney's fees, and we are comfortable just submitting that to the Court if the jury returns a verdict that the attorney's fees are a consequential damage and you let that issue go to the jury. So we will be addressing attorney's fees at the end of the case, if appropriate, by you, rather than by the jury.[1]

Xyngular's counsel agreed as follows:

> MR. EDWARDS: Yes, Your Honor. I'm not going to argue they waived some claim to attorney's fees. I'm not sure they have made this claim, but I just don't want that being an issue before the jury.[2]

The court then accepted this agreement as follows:

> THE COURT: All right. And, actually, that's the usual way those things are handled, and I appreciate your agreement about that.
>
> MR. MANNING: Thank you, Your Honor.
>
> THE COURT: We will handle it later if the jury verdict warrants it. All right?
>
> MR. MANNING: Yes.[3]

On the fifth day of trial, after both parties had rested, the jury was instructed on the relevant law. Two jury instructions are pertinent to the current dispute. First, the jury

---

[1] Docket No. 162, Exhibit B, March 30, 2015 Trans. 5:7-20.

[2] *Id*. at 5:21-24.

[3] *Id*. at 5:25-6:6.

instruction on Plaintiff's breach of contract claim provided that:

> Ms. Freres claims that Xyngular breached the parties' contract. A party to a contract breaches the contract if it fails to do what it promised to do in the contract.
>
> In this case, Ms. Freres claims Xyngular breached their contract by:
>
> (1) Failing to provide Ms. Freres with notice of her alleged breach before terminating her contract on March 7, 2013, as required by Policies § 6.B.1;
>
> (2) Failing to give Ms. Freres ten business days to respond to Xyngular's allegations of breach before terminating her contract on March 7, 2013, as required by Policies § 6.B.2;
>
> (3) Failing to establish a Distributor Conduct Review Committee or have such a committee review the decision to terminate Ms. Freres's Contract, as required by Policies §§ 6.F and 27.B;
>
> (4) Failing to institute a Mediation/Arbitration policy prior to terminating Ms. Freres's Contract on March 7, 2013, as required by Policies §§6.B.4 and 7.B; and
>
> (5) Failing to establish an appeal procedure prior to terminating Ms. Freres's Contract on March 7, 2013, as required by Policies § 6.B.4.
>
> (6) Terminating her independent distributor account without basis.[4]

During the trial, Plaintiff testified, among other things, that she would have used the resolution opportunities promised to her in Xyngular's policies to avoid the lengthy, stressful, and expensive process of vindicating her rights through litigation. This testimony was unrebutted and presented without objection.

---

[4] Docket No. 145, Jury Instruction No. 15.

The next relevant jury instruction concerned consequential damages. Jury Instruction No. 28 read as follows:[5]

> If a party recovers damages for the benefits she expected to receive from the contract, then that party is also entitled to recover "consequential" damages caused by Xyngular's breach.
>
> Consequential damages are those losses or injuries reasonably within the contemplation of the parties, that is, they could have considered them or reasonably foreseen them, at the time the contract was made.
>
> In order to decide whether a loss or an injury was foreseeable at the time the contract was made, you should examine the nature and language of the contract and the reasonable expectations of the parties. A loss may be foreseeable because it follows from the breach (1) in the ordinary course of events, or (2) as a result of special circumstances, beyond the ordinary course of events, that Xyngular had reason to know.

After deliberating for approximately three hours, the jury submitted a question to the court, asking if it could award "attorneys' fees" as Ms. Freres' consequential damages, without determining an amount. After a discussion in open court, the parties stipulated to amending the Special Verdict Form as follows:

> In answer to your question, substitute the following two questions for Question 4 on the Special Verdict Form.[6]
>
> Do you find that attorney's fees should be awarded as consequential damages?
>
> Yes___ No___

---

[5] *Id.* Jury Instruction No. 28.

[6] Question 4 of the Special Verdict Form had originally asked "what amount ot consequential damages did Ms. Freres suffer as a result of the breach? Docket No. 150 at 2.

If yes, the Judge will determine the appropriate amount of fees.

Do you find that there are other consequential damages?

Yes\_\_\_ No\_\_\_

If so, enter the amount. $_____[7]

The jury returned shortly thereafter with a verdict in favor of Ms. Freres, finding that Xyngular breached its contract with Plaintiff and also that it breached the implied covenant of good faith and fair dealing. The jury determined that Ms. Freres suffered damages in the amount of $252,613 as a result of these breaches.[8] It also determined that she should be awarded attorney fees as consequential damages and awarded no other consequential damages. After reaching this verdict, pursuant to the stipulated amended Special Verdict Form, the jury was discharged without objection.

Based on the jury's verdict, Ms. Freres now seeks an award of her attorney fees, along with her taxable and nontaxable costs.[9] Xyngular, however, seeks to amend the judgment to "prevent manifest injustice" pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, arguing that Ms. Freres is not entitled to attorney fees and that the court erred when it asked the jury to decide whether she was entitled to attorney fees.

---

[7] *Id*. at 3, Court's Answer to Jury's Question; Docket No. 162, Ex. D, 40:2-12 April 3, 2015 Transcript.

[8] Docket No. 150.

[9] The court has already awarded taxable costs in the amount of $5,252.57. *See* Docket No. 173.

**I.  Xyngular's Motion to Amend the Judgment**

Xyngular contends that the court erred when it modified the Special Verdict Form to ask the jury, "Do you find that attorney's fees should be awarded as consequential damages?" Xyngular asserts that Ms. Freres' entitlement to attorney fees is a question of law for the court, not a question of fact for the jury.  Under the facts of this case, Xyngular argues, Ms. Freres is not entitled to recover attorney fees because there is no attorney fee provision in the parties' contract and there is no basis to award Ms. Freres attorney fees as consequential damages under Utah law.   Thus, according to Xyngular, the judgment incorporating the Special Verdict must be amended so that Xyngular is not responsible for Ms. Freres' attorney fees.

*A.  Waiver*

First, Xyngular argues that Ms. Freres' claim to an award of attorney fees was waived when the claim was not included in the parties' Stipulated Pretrial Order.[10]  This is particularly the case, Xyngular contends, when attorney fees are claimed as consequential damages, as opposed to a request for attorney fees by a "prevailing party" pursuant to a contract allowing the successful party to an award of fees.  Xyngular claims that it was completely surprised on the first morning of trial when counsel for Ms. Freres raised the issue of her intention to seek consequential damages, including attorney fees.

To the contrary, Ms. Freres contends that it is Xyngular that has waived any claim that Ms. Freres is not entitled to her attorneys' fees, arguing that not only did Xyngular fail to raise

---

[10]  Docket No. 124.

the issue, but it expressly stipulated to the jury instruction and Special Verdict Form to which it now objects.  Ms. Freres maintains that, "to the extent Xyngular did not believe Ms. Freres was entitled to fees as consequential damages, [Xyngular] continually misled the Court, Ms. Freres' counsel, and the jury into relying on its contrary position.  Xyngular agreed to have the Court determine the amount of fees if awarded by the jury and Ms. Freres acted consistent with that agreement."[11]  Consequently, according to Ms. Freres, Xyngular is bound by the positions it took during litigation, and it cannot now disadvantage Mr. Freres by changing its position after the jury was discharged.  In other words, she argues, Xyngular has waived any argument it had that the jury's verdict was improper.

    The court agrees with Ms. Freres and finds that she did not waive her claim to an award of attorney fees by failing to include it in the Stipulated Final Pretrial Order.  In the parties' Stipulated Final Pretrial Order, one of the contested issues of fact listed is the following: "[t]he damages caused by Xyngular's termination of Ms. Freres' independent distributor account."[12]  There is no requirement that Ms. Freres had to specifically list attorney fees as one of the possible consequential damages.  In addition, the court finds that Xyngular either knew or should have known that Ms. Freres was seeking attorney fees as consequential damages.  Plaintiff had included a request for attorney fees in her Prayer for Relief in her Complaint,[13] and her request for attorney fees was also apparent during the parties' exchange of proposed jury

---

[11] Docket 162 at 7.

[12] *See* Docket No. 112, Final Pretrial Order, 6.

[13] *See* Docket No. 2, page 15.

instructions in the several weeks prior to trial. Specifically, Ms. Freres submitted to Xyngular an instruction on consequential damages, modeled after MUJI CV2136, and supported by the following citation from *Heslop v. Bank of Utah:*[14]

> Terminated employees, like injured insurance claimants, find themselves in a particularly vulnerable position once the employer breaches the employment agreement. Employers can reasonably foresee that wrongfully terminated employees will be forced to file suit to enforce their employment contracts and will foreseeably incur attorneys' fees.[15]

In Ms. Freres' proposed consequential damages instruction, she also included a "but see" citation to *Hogan v. Utah Telecomm. Open Infrastructure Agency*,[16] one of the cases heavily relied upon by Xyngular to support its instant motion. This citation (including a parenthetical) to *Heslop*, coupled with Ms. Freres' "but see" citation to Hogan, was a clear indication that Ms. Freres intended to seek attorney fees as consequential damages. Xyngular did not object to this instruction during the parties' meet-and-confer session regarding jury instructions on March 2, 2014, and instead, agreed to include the instruction, including the *Heslop* citation and parenthetical, in the proposed *Stipulated* Jury Instructions submitted to the court.[17]

Accordingly, the court finds that Ms. Freres did not waive her claim to attorney fees. Moreover, the court finds that Xyngular stipulated to the consequential damages instruction,

---

[14] 839 P.2d 828, 840-41 (Utah 1992).

[15] *See* Docket # 162, Exhibit A.

[16] Case No.1:11-CV-64 TS, 2013 WL 1619818, at *5 (D. Utah Apr. 15, 2013),

[17] *See* Docket No. 109-1; Proposed Stipulated Jury Instructions at p. 17.

including a citation to and parenthetical about *Heslop* and also stipulated to amending the Special Verdict Form after the jury inquired about awarding attorney fees as consequential damages. Thus, the court finds that Xyngular has waived any argument that the court erred in allowing the jury to determine whether attorney fees could be awarded as consequential damages.

    **B. *Utah Law Concerning Attorney Fees***

Xyngular also contends that Utah law does not allow for the recovery of attorney fees as consequential damages unless authorized by contract or statute, or unless the contract is an insurance contract or the third-party exception applies. But even if Xyngular had not waived its argument concerning attorney fees, the court still concludes that it is proper, under the specific facts of this case, to award attorney fees as consequential damages.

Utah follows the American rule, which states that a prevailing party bears its own attorneys' fees unless authorized by contract or statute. *National Indem. Co. v. Nelson, Chipman & Burt*, 2013 WL 226881, *2 (D. Utah Jan. 28, 2013) (citing *Collier v. Heinz*, 827 P.2d 982, 983 (Utah Ct. App. 1992). In *Collier*, the Utah Court of Appeals summarized that "[t]he award of attorney fees as consequential damages, outside the context of statutory and contractual authorization, should be limited to the two situations noted above: insurance contracts and the third-party exception." 827 P.2d at 984.

There is another exception, however, that applies to this case. As mentioned above, in *Heslop v. Bank of Utah*, 839 P.2d 828 (Utah 1992), the Utah Supreme Court extended the insurance contract exception to allow a former Bank of Utah employee who had been

wrongfully terminated to recover attorney fees despite the absence of a contractual or statutory provision to that effect. 839 P.2d at 840-41.[18]  Indeed, the court found that the trial court had erred in refusing to instruct the jury on consequential damages arising from the plaintiff's termination, including attorney fees, reasoning that "[t]erminated employees, like injured insurance claimants, find themselves in a particularly vulnerable position once the employer breaches the employment agreement.  Employers can reasonably foresee that wrongfully terminated employees will be forced to file suit to enforce their employment contracts and will foreseeably incur attorney fees."[19]

Thus, while this court recognizes that the request for attorney fees in this case is not based on statute or contract, the specific facts of this case warranted the court's amended Special Verdict question to the jury concerning attorney fees.  The jury then determined that Xyngular breached the very contract that had promised Ms. Freres procedural protections designed to provide a quick and inexpensive dispute-resolution process, and that therefore, attorney fees were foreseeable consequential damages.  In other words, had Xyngular complied with its promise to (1) have a Distributor Conduct Review Committee to review the decision to terminate Ms. Freres' contract, (2) implement a mediation/arbitration policy; and (3) establish an appeal procedure, Ms. Freres would have had an opportunity to resolve the dispute promptly, while avoiding costly litigation.  Instead, as reflected in the jury's verdict,

---

[18] *See also Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 468 (Utah 1996), in which the Utah Supreme Court held that attorney fees are recoverable as consequential damages flowing from an insurer's breach of either express or implied terms of the insurance contract.

[19] *Id.*

Xyngular could foresee that its breach of the parties' agreement, including its procedural protections, and its failure to act in good faith would force Ms. Freres to retain counsel.

Furthermore, even if the court erred in submitting the question of attorney fees as consequential damages to the jury, the court nevertheless would have addressed the issue after trial, as agreed upon by the parties, and would have awarded attorney fees for the same reasons set forth above.  Accordingly, Xyngular's Motion to Amend the Judgment is denied.

**II.     Ms. Freres' Motion for Attorney Fees**

Counsel for Ms. Freres have requested $253,131.25 in attorney fees, and 33,373.53[20] in non-taxable costs, which include $23,832 for Ms. Freres' economic expert, Mr. Kelly Johnson; $537.26. for travel to depositions; $8,357.07 for computer research required to successfully litigate her claims and defend against those of Defendant and $647.20 for in-house copies that were determined not to be taxable costs.

The court finds that the fees and costs requested are reasonable, and Xyngular has not objected to any of the requested fees or costs.  Accordingly, the court grants Ms. Freres' Motion for Attorney Fees and directs Xyngular to pay to Ms. Freres' counsel the amount of $286,504.78.

---

[20] In her briefing, Ms. Freres requests $38,676.20 in costs, but this amount includes $5,252.57 which as since been awarded as taxable costs.  *See* Docket No. 173.   Thus, the amount currently requested would be $33,423.63 ($38,676.20 - $5,252,57 = $33,423.63).
    The court recognizes that there is a $50.10 discrepancy between the total amount of costs claimed by Ms. Freres ($33,423.63) and the sum of all the individual costs ($33,373.53), but the court cannot discern where the discrepancy arises.  Accordingly, the court will award the sum of the component costs listed above, which is $33,373.53.

Counsel for Ms. Freres has asked the court to supplement the Judgment after they submit their fees incurred in briefing the instant motions. The court will award an additional $2,000 for these fees but will not entertain any further requests for fees.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Amend the Judgment [Docket No. 156] is DENIED, and Plaintiff's Motion for Attorney Fees [Docket No. 154] is GRANTED, and Xyngular is directed to pay $288,504.78 in attorney fees and nontaxable costs to Ms. Freres. The court will not supplement the Judgment with any additional attorney fee awards.

DATED this 31st day of July, 2015.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge